Joseph M. Alioto (SBN 42680)
Theresa D. Moore (SBN 99978)
Thomas Paul Pier (SBN 235740)
Jamie L. Miller (SBN 271452)
ALIOTO LAW FIRM
One Sansome Street, 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
Email: jmalioto@aliotolaw.com
        tmoore@aliotolaw.com
        tpier@aliotolaw.com
        jmiller@aliotolaw.com
[ADDITIONAL COUNSEL LISTED ON LAST PAGE]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CYNTHIA PROSTERMAN, JAN MARIE BROWN, CAROLYN FJORD, KATHERINE R. ARCELL, KEITH DEAN BRADT, JUDY BRAY, JOSÉ M. BRITO, ROBERT D. CONWAY, JUDY CRANDALL, ROSEMARY D'AUGUSTA, BRENDA K. DAVIS, PAMELA FAUST, DON FREELAND, DONNA FRY, GABRIEL GARAVANIAN, HARRY GARAVANIAN, YVONNE JOCELYN GARDNER, LEE M. GENTRY, VALARIE ANN JOLLY, GAIL S. KOSACH, JOHN LOVELL, MICHAEL C. MALANEY, LEN MARAZZO, LISA MCCARTHY, PATRICIA ANN MEEUWSEN, L. WEST OEHMIG, JR., DEBORAH M. PULFER, DANA L. ROBINSON, ROBERT A. ROSENTHAL, BILL RUBINSOHN, SONDRA K. RUSSELL, SYLVIA N. SPARKS, JUNE STANSBURY, CLYDE D. STENSRUD, WAYNE TALEFF, GARY TALEWSKY, ANNETTE M. TIPPETTS, DIANA LYNN ULTICAN, J. MICHAEL WALKER, PAMELA S. WARD and CHRISTINE WHALEN, <div align="right">Plaintiffs,</div> v. <br><br> AIRLINE TARIFF PUBLISHING COMPANY, AMERICAN AIRLINES, INC., DELTA AIR LINES, INC. and UNITED AIRLINES, INC., <div align="right">Defendants.</div> | CASE NO. <br><br> **COMPLAINT TO ENJOIN DEFENDANTS' VIOLATIONS OF OF SECTION 1 OF THE SHERMAN ANTITRUST ACT AND SECTION 16720 OF THE CALIFORNIA CARTWRIGHT ANTITRUST ACT AND FOR DAMAGES** <br><br> **JURY TRIAL DEMANDED** |

The Plaintiffs bring this action under Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15 and 26, and Section 16750 of the California Cartwright Antitrust Act, Cal. Bus. and Prof. Code § 16750, to obtain injunctive relief and damages caused by reason of the Defendants' violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section 16720 of the California Cartwright Antitrust Act, Cal. Bus. and Prof. Code § 16720.

Plaintiffs purchase airline tickets from the defendant airlines for themselves and others. They complain and allege as follows:

## I.   NATURE OF THE ACTION

1.      This action arises out of a combination and conspiracy by the three largest commercial passenger airlines in the United States, United Airlines, Inc., American Airlines, Inc. and Delta Air Lines, Inc. (collectively, the "Airline Defendants"), who together control over 70 percent of the market for U.S. passenger air travel, and the Airline Tariff Publishing Company ("ATP") (all defendants are collectively referred to as the "Defendants") in which the Airline Defendants, aided and abetted by ATP, agreed to increase the fares for domestic multi-city flights and no longer permit non-refundable fares for each leg of such flights to be combined to arrive at the price for the multi-city itineraries, thereby causing consumers to pay hundreds and even thousands of dollars more for exactly the same flights.

2.      The combination and conspiracy began on or before April 1, 2016, and it continues to the present.

3.      The intent, purpose and effect of the conspiracy was and is to fix, raise, maintain, and or stabilize prices for air passenger transportation services on multi-city trips within the United States in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and Section

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

2

16720 of the Cartwright Antitrust Act, Cal. Bus. and Prof. Code § 16720, by, among other actions, colluding to fix the prices of airfares on multi-city trips in the United States.

4.     The Airline Defendants each announced their agreement in substantially identical terms in written notifications given to members of the travel agency industry, including Plaintiffs.

5.     The Plaintiffs are air travel passengers and travel agents who bring this action under Sections 4 and 16 of the Clayton Antitrust Act and Section 16750 of the California Cartwright Antitrust Act to prohibit the Defendants from fixing and stabilizing airfares for multi-city air travel in violation of Section 1 of the Sherman Antitrust Act and Section 16720 of the Cartwright Act.

6.     On or about April 1, 2016, the Airline Defendants announced a change in multi-city itinerary pricing with the effect that air travelers who fly to multiple destinations are charged hundred and even thousands of dollars more when they book round-trip multi-destination flights rather than combining lower fares of one-way flights to the same destinations on the same flights.

## II.   JURISDICTION AND VENUE

7.     This complaint is filed under Sections 4 and 16 of the Clayton Antitrust Act, 15 U.S.C. §§ 15 and 26, to recover damages and obtain equitable relief, including costs of suit and reasonable attorneys' fees, for violations of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and under Section 16750 of the California Cartwright Antitrust Act, Cal. Bus. and Prof. Code § 16750, to recover damages and obtain equitable relief, including costs of suit and reasonable attorney's fees, for violations of Section 16720, *et seq.* of the California Cartwright Antitrust Act, Cal. Bus. and Prof. Code § 16720.  The Court has original federal-question jurisdiction over the Sherman Act and Clayton Act claims asserted in this complaint pursuant to 28 U.S.C. §§ 1331

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

3

and 1337, and the Court has supplemental jurisdiction over the California Cartwright Act claims under 28 U.S.C. § 1367.

8.     Venue is proper in this District pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d) because Defendants reside, transact business, are found and/or have agents within this District, and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District and a substantial portion of the affected interstate trade and commerce described herein has been carried out in this District.

9.     This Court has personal jurisdiction over Defendants because, *inter alia*, each: (a) transacted business in this District; (b) directly sold and delivered passenger air transportation in this District; (c) has substantial aggregate contacts within this District; or (d) engaged in an illegal price-fixing conspiracy that was directed at, and had the intended effect of, causing injury to persons and entities residing in, located in, or doing business in this District.

### III.   PLAINTIFFS

10.     Each Plaintiff named herein is an individual and a citizen of the state listed as the address for each such Plaintiff, and in the four years next prior to the filing of this action, Plaintiffs purchased airline tickets for themselves and, as travel agents, on behalf of others from the Airline Defendants as a result of which they have suffered pecuniary and irreparable injury to themselves, their property and their businesses, and each Plaintiff expects to continue to purchase airline tickets, and to continue in the business of purchasing airline tickets, from the Airline Defendants in the future:

Cynthia Prosterman, 527 20th Avenue, San Francisco, CA  94121;

Jan Marie Brown, 975 Kennedy Dr., Carson City, NV, 89706;

Carolyn Fjord, 4405 Putah Creek Road, Winters, CA 95694;

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

4

Katherine R. Arcell, 4427 S. Miro St., New Orleans, LA 70125;

Keith Dean Bradt, 690 W 2nd St, Suite 200, Reno, NV  89503;

Judy Bray, 5140 N Union Blvd., Ste. 200, Colorado Springs, CO  80918;

José M. Brito, 2715 Sage Bluff Ct., Reno, NV  89523;

Robert D. Conway, 6160 W Brooks Ave., Las Vegas, NV 89108;

Judy Crandall, 4085 Ramrod Circle, Reno, NV  89519

Rosemary D'Augusta, 347 Madrone St., Millbrae, CA 94030;

Brenda K. Davis, 11022 Old Military Trail, Forney, TX, 75126;

Pamela Faust, 6227 Whileaway Dr., Loveland, OH  45140;

Don Freeland, 73801 White Sands Dr., Thousand Palms, CA 92276;

Donna Fry, 6740 Northrim Ln., Colorado Springs, CO  80919;

Gabriel Garavanian, 104 Sequoia Road, Tyngsboro, MA 01879;

Harry Garavanian, 104 Sequoia Road, Tyngsboro, MA 01879;

Yvonne Jocelyn Gardner, 10-Gold Coin Ct., Colorado Springs, CO 80919;

Lee M. Gentry, 7021 Forestview Dr., West Chester, OH 45069-3616;

Valarie Ann Jolly, 2121 Dogwood Loop, Mabank, TX 75156;

Gail S. Kosach, 4085 Ramrod Cir., Reno, NV 89519;

John Lovell, 1801 Breton Rd., Grand Rapids, MI 49546

Michael C. Malaney, 5395 Egypt Creek NE., Ada, MI 49301;

Len Marazzo, 1260 Springer Ct., Reno, NV 89511;

Lisa McCarthy, 35 Lancashire Place, Naples, FL 34104;

Patricia Ann Meeuwsen, 1062 Wedgewood, Plainwell, MI  49080;

L. West Oehmig, Jr., 1017 East Brow Road, Lookout Mountain, TN 37350;

Deborah M. Pulfer, 16264 E. Mason Rd., Sidney, OH  45365;

Dana L. Robinson, 127B Palm Bay Terrace, Palm Beach Gardens, FL  33418;

Robert A. Rosenthal, 4659 Bridle Pass Drive, Colorado Springs, CO  80923;

Bill Rubinsohn, 261 Old York Road, Jenkintown, PA 19046;

Sondra K. Russell, 1206 N. Loop 340, Waco, TX 76705;

Sylvia N. Sparks, 3320 Conte Drive, Carson City, NV  89701;

June Stansbury, 363 Smithridge Park, Reno, NV 89502;

Clyde D. Stensrud, 1529 10th St. W., Kirkland, WA 98033;

Wayne Taleff, 768 Farmsworth Ct., Cincinnati, OH 45255;

Gary Talewsky, 12 Cortland Dr. Ext., Sharon MA 02067

Annette M. Tippetts, 2783 East Canyon Crest Dr., Spanish Fork, UT 84660;

Diana Lynn Ultican, 9039 NE Juanita Dr, #102, Kirkland, WA  98034;

J. Michael Walker, 11865 Heather Ln., Grass Valley, CA 95949;

Pamela S. Ward, 1322 Creekwood Dr., Garland, TX 75044; and

Christine Whalen, 1129 Pine St., New Orleans, LA 70118

## IV.   DEFENDANTS

11.     United Airlines, Inc. (individually, "United") is a corporation organized and
existing under the laws of the State of Delaware, with its principal place of business located at
233 South Wacker Drive, Chicago, Illinois, 60606, and is a named defendant herein. United
conducts air passenger transportation services throughout the United States, including within this
District.

12.     American Airlines, Inc. (individually, "American") is a corporation organized and
existing under the laws of the State of Delaware, with its principal place of business located at

4333 Amon Carter Boulevard, Fort Worth, Texas, 76155, and is a named defendant herein. American conducts air passenger transportation services throughout the United States, including within this District.

13.     Delta Air Lines, Inc. (individually, "Delta) is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1030 Delta Boulevard, Atlanta, Georgia, 30354, and is a named defendant herein. Delta conducts air passenger transportation services throughout the United States, including within this District.

14.     Airline Tariff Publishing Company (individually, "ATP") is, upon information and belief, a District of Columbia corporation with its principal place of business at Washington Dulles International Airport, 45005 Aviation Drive, Dulles, Virginia, and is a named defendant herein.

15.     ATP is wholly owned by a group of airlines that includes the Airline Defendants in this action.

16.      Whenever this Complaint refers to any act, deed, or transaction of any Defendant, it means the Defendant engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they actively were engaged in the management, direction, control, or transaction of its business or affairs.

## V.   CO-CONSPIRATORS

17.     Various others, not named as Defendants, have participated as co-conspirators with the Defendants in the violations alleged in this Complaint, and have performed acts and made statements in furtherance thereof.

## VI.   TRADE AND COMMERCE

18.     During the period of time covered by this Complaint, each of the Airline

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

Defendants has been engaged in the business of selling and providing air passenger transportation services throughout the United States.

19.     Each of the Airline Defendants provides scheduled domestic air passenger transportation services throughout the United States and to and from numerous city pairs within the United States.  A city pair is a set of two cities between which scheduled air passenger transportation services are provided.  Each of the Airline Defendants competes with each of the other Airline Defendants for travelers throughout the United States and in numerous city pairs, including in California.

20.     Total sales of domestic air passenger transportation services were approximately $146 billion in 2014, and they are reasonably expected to have exceeded that amount in 2015 (with revenues for the first three quarters of 2015 of approximately $110.4 billion).  Domestic net income for all domestic air carriers in 2014 was approximately $8.8 billion, and they substantially exceeded that figure in 2015 (with net income for the first three quarters of 2015 of approximately $14.2 billion).

21.     American's domestic air passenger transportation services revenues were approximately $15.5 billion in 2014, and it is reasonably expected to have exceeded that figure in 2015 (with revenues for the first three quarters of 2015 of approximately $14.4 billion).  Domestic net income for American in 2014 was approximately $971 million, and it substantially exceeded that figure in 2015 (with net income for the first three quarters of 2015 of approximately $2 billion).

22.     Delta's domestic air passenger transportation services revenues were approximately $26.8 billion in 2014, and it is reasonably expected to have exceeded that amount in 2015 (with revenues for the first three quarters of 2015 of approximately $21 billion).

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

8

Domestic net income for Delta in 2014 was approximately $562.4 million, and it substantially exceeded that figure in 2015 (with net income for the first three quarters of 2015 of approximately $2.3 billion).

23. United's domestic air passenger transportation services revenues were approximately $22.3 billion in 2014, and it is reasonably expected to have exceeded that amount in 2015 (with revenues for the first three quarters of 2015 of approximately $16.6 billion). Domestic net income for United in 2014 was approximately $369 million, and it substantially exceeded that figure in 2015 (with net income for the first three quarters of 2015 of approximately $3.4 billion).

24. During the complaint time period, a substantial portion of each of the Airline Defendants' revenues has been derived from the sale and provision of air passenger transportation services between different states. The activities of each of the Airline Defendants that are the subject of this Complaint have been within the flow of and have substantially affected interstate trade and commerce.

25. At all times relevant hereto, ATP has been engaged in the collection and dissemination of air passenger transportation fare data. As described below, the Airline Defendants transmit fare information such as fare amounts and restrictions to ATP, which in turn disseminates the information to the Airline Defendants. During the complaint time period, the activities of ATP that are the subject of this Complaint have been within the flow of and have substantially affected interstate trade and commerce, including trade and commerce in California.

26. Part of ATP's stated mission is to protect or increase airline revenue. It aids, abets and enables its airline owners, including the Airline Defendants, to fix prices on airfares.

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

9

27.     ATP distributes fare and fare-related data to the Airline Defendants.  ATP's service allows the Airline Defendants to easily and flexibly create, modify, match, cancel, fix and stabilize airfares among and between the Airline Defendants in seconds.

28.     ATP aids and abets the Airline Defendants in the fixing and stabilizing of airfares on multi-city trips.

29.     Each of the Airline Defendants is an owner of ATP and ATP maintains on their behalf a data base of airline fare information.  For each fare submitted by an Airline Defendant to ATP for processing, each Airline Defendant supplies ATP with, among other things, a fare basis code (the name of the fare), the dollar amount, and the fare rules.  The fare rules contain the conditions under which a fare can be used or sold (*i.e.*, "fare restrictions").

30.     The Airline Defendants submit such fare changes to ATP at least once each weekday.

31.     After ATP receives the fare changes from the Airline Defendants, it processes the changes and disseminates information on daily fare changes to the Airline Defendants, including computer reservation systems owned by the Airline Defendants.  The information disseminated by ATP is comprised of many different types of information and includes the rules involved in each airline's pricing actions.

32.     Because of the substantial ownership of ATP by the Airline Defendants, American, United and Delta directly participate in the rules affecting airfares.  In this case, the Airline Defendants and ATP changed the rules, including those pertaining to so-called CAT 10 fares for multi-city air travel, so that air passengers traveling on multi-city itineraries now pay hundreds and even thousands of dollars more than if they booked passage on the same flights to the same cities as separate one-way fares.

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

10

33.     The Airline Defendants, either directly or through an ATP subscriber, employ sophisticated computer programs that sort the fare information received from ATP and produce detailed reports. These reports allow the Airline Defendants to monitor and analyze immediately each other's fare changes and restrictions.

34.     The Airline Defendants have the ability, are likely, and have threatened, to penalize Plaintiffs, including by terminating their ability to book flights and purchase tickets as travel agents and by imposing substantial financial penalties on them if the Plaintiffs do not abide by the policies and rules set by the Airline Defendants and ATP, including the illegal price fixing and fare restrictions complained of herein.

## VII.   FIRST CAUSE OF ACTION

### (Price Fixing)

35.     Sometime prior to April 1, 2016, the Airline Defendants agreed to change ATP's "CAT 10" rule on fare combinability to allow them to charge hundreds and even thousands of dollars more for multi-city itineraries than if the same flights were purchased separately.  This conduct constitutes a combination and conspiracy among the Airline Defendants, ATP, and co-conspirators in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and in violation of Section 16720 of the California Cartwright Act, Cal. Bus. and Prof. Code § 16720.  The offenses are likely to continue and recur unless the relief hereinafter prayed for is granted.

36.     The combination and conspiracy consist of agreements, understandings, and concerted actions to increase fares, eliminate discounted fares, and set fare restrictions for tickets purchased for multi-city air travel within the United States.

37.     For the purpose of forming and effectuating the combination and conspiracy, the Airline Defendants and co-conspirators, through ATP, did the following things, among others:

(a)     agreed to higher fares for multi-city air travel by eliminating the "combinability" of lower, non-refundable, one-way fares on multi-city trips and requiring that a single round-trip fare be established for all such flights, on the same planes, to the same destinations, at fares costing Plaintiffs and other consumers up to ten times the cost of the combined one-way fares;

(b)     agreed to prohibit passengers and travel agents, including Plaintiffs, from buying separate legs of multi-city air travel;

(c)     agreed, and threatened travel agents, including Plaintiffs, who fail to charge the new, higher, fixed airfares for multi-city travel that they would receive "debit memos" requiring the travel agents to pay the Airline Defendants the difference between the lower per-leg prices at which they booked flights and the new, higher, fixed prices;

(d)     agreed, and threatened, that passengers who purchase fares for separate legs of multi-city air travel, rather than purchase fares for the same multi-city travel at the new, higher, fixed prices, will suffer the loss of baggage;

(e)     agreed, and threatened, to charge passengers $200.00 in change fees for each leg of a multi-city itinerary where each leg is booked separately rather than as a single ticket at the new, higher, fixed price; and

(f)     agreed, and threatened, to refuse to deal with travel agents, including Plaintiffs, who do not charge the Airline Defendants' higher, fixed prices, but instead book multi-city itineraries for their customers on a less expensive, per leg basis.

38.     The Airline Defendants each took the actions they agreed to take.

39.     On April 1, 2016, American announced: "Recently American Airlines, along with other U.S. carriers, made changes to CAT 10 domestic combinability fare rules that impact certain one-way fares.  These changes prevent combining non-refundable local fares to create a connecting itinerary."  American's announcement is attached and incorporated as Exhibit A.

40.     With respect to the change in domestic combinability fare rules, American's spokesman Joshua Freed said: "The change was made in mid-March to stop flyers from paying fares lower than the airline had intended for certain markets."

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

12

41.     On March 30, 2016, United announced: "Multiple U.S. carriers recently made changes to the CAT 10 domestic combinability fare rules impacting some one-way fares."  A copy of United's announcement is attached and incorporated as Exhibit B.  United's announcement contained the following graphic example of how airfares for multi-city trips will be increased by reason of the illegal actions complained of herein.  This example is for multi-city trips from Los Angeles to Houston to New York and from Los Angeles to Houston to New Orleans.  The fares for each individual leg of the trip is in black, while United's newly imposed illegal "path fares" are in blue:



42.     On or about April 1, 2016, Delta stated: "Delta Air Lines recently made a change to the combinability of one-way fare products."  And, "End-on-end combinability of non-refundable fares has been restricted."  Delta's announcement is attached and incorporated as Exhibit C.

43.     The above announcements and the implementation of the new airfare rules by the Airline Defendants were essentially contemporaneous, whereas fares and rule changes of such magnitude in the airline industry are usually first implemented by one airline, observed for some time by other airlines to determine their effectiveness, and then followed later by the other

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

13

airlines.  In this instance the Airline Defendants announced and implemented the fare rule change virtually simultaneously as a result of a combination and conspiracy by them.

44.     Airline Industry estimates suggest that the change in the rule by the Airline Defendants will affect between and 20 and 25 percent of  business multi-city trips.

45.     On April 7, 2016, the Associated Press reported as follows on a comparison of costs for multi-city fares under the Airline Defendants' former, traditional method of pricing and the fares in effect under their new agreement:

(a)     A Delta itinerary flying from Orlando to Detroit to New York and back to Orlando, traditionally priced by combining the fare for each leg of the trip, had a cost to the customer of $282.00.  When priced according to the Airline Defendants' new agreement, the same trip now costs $2,174.00 (an overcharge of $1,892.00).

(b)     An American itinerary flying from Miami to Chicago to San Francisco and back to Miami, traditionally priced by combining the fare for each leg of the trip had a cost to the customer of $664.00.  When priced according to the Airline Defendants' new agreement, the same trip now costs $1,064.00 (an overcharge of $400.00).

(c)     A United itinerary flying from New York to Ft. Lauderdale to Chicago and back to New York, traditionally priced by combining the fare for each leg of the trip had a cost to the customer of $308.00.  When priced according to the Airline Defendants' new agreement, the same trip now costs $507.00 (an overcharge of $199.00).

46.     The "Cranky Flier" blog, which is devoted to air travel issues, reported on March 31, 2016, that under the Defendants' agreement, a passenger flying an American itinerary in May 2016, from San Francisco to Washington DC, then from Washington DC to Dallas and then back to San Francisco will pay a round-trip fare of $1,837.20, rather than $412.80 if the segments were purchased individually for the very same flights, at the very same time, on the very same aircraft, in the very same seat (i.e., $206.60, $88.10 and $118.10, respectively); an overcharge of $1,424.40.

47.     Similarly, a check of the Airline Defendants' fares for mid-week travel in May 2016, disclosed the following exorbitant price increases for multi-city itineraries:

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

(a)     A United itinerary flying May 10-13, from New Orleans to Denver to Chicago and back to New Orleans, priced by combining the one-way fare for each leg of the trip would have a cost to the customer of $312.30.  When priced according to the Airline Defendants' new agreement, the lowest fare for the same trip will cost $457.70.

(b)     A Delta itinerary flying May 10-13, from New Orleans to Atlanta to New York and back to New Orleans, priced by combining the one-way fare for each leg of the trip would have a cost to the customer of $321.30.  When priced according to the Airline Defendants' new agreement, the lowest fare for the same trip will cost $520.70.

(c)     An American itinerary flying May 10-13, from New Orleans to Dallas to Minneapolis and back to New Orleans, priced by combining the one-way fare for each leg of the trip would have a cost to the customer of $263.80.  When priced according to the Airline Defendants' new agreement, the lowest fare for the same trip will cost $517.20.

48.     On April 8, 2016, U.S. Senator Bob Menendez called for an investigation of the Defendants for the acts alleged herein.  Senator Menendez's press release contains several examples graphically depicting the enormous fare increases which airline passengers are required to pay as a result of the illegal actions of the Defendants.  Copies of the graphs contained in the press release exemplifying the dramatic increases in fares as a result of the Defendants' acts are attached and incorporated as Exhibit D.

49.     This combination and conspiracy has, and continues to have, the following effects, among others:

(a)     price competition among the Airline Defendants for the provision of air passenger transportation services in domestic multi-city destination flights has been unreasonably restrained;

(b)     Plaintiffs and their customers have been deprived of the benefits of free and open competition in the sale of air passenger transportation services and have paid supra-competitive prices for multi-destination flights as a result of the Airline Defendants' combination and conspiracy fixing fares on domestic multi-city air travel;

(c)     Plaintiffs, in their capacities as travel agents, have suffered, and are continuing to suffer damages, the extent of which are currently unknown and will be extraordinarily difficult to ascertain, as well as irreparable harm by reason of the Airline Defendants' agreement to fix fares on domestic multi-city air travel in the following ways:

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

15

(i)     Plaintiffs are now required to expend an inordinate amount of time booking individual one-way legs of multi-city flights in order to save their customers hundreds, and in some cases thousands, of dollars they would otherwise be required to pay as a result of the Airline Defendants' price fix.  In many cases the time required to book the identical multi-city trip has increased from approximately five minutes to twenty minutes or more by reason of the need to enter full data sets for each passenger on each one-way leg and obtain a Personal Name Report ("PNR") for each leg.  This is a time-consuming process for which Plaintiffs cannot be compensated;

(ii)    By booking multi-city flights for their customers by combining one-way fares at a lower aggregate cost than the illegal fares newly imposed by the Airline Defendants, the Plaintiffs are threatened by the Airline Defendants with the imposition of substantial "debit memos" in the future;

(iii)   By booking multi-city flights for their customers by combining one-way fares at a lower aggregate cost than the illegal fares newly imposed by the Airline Defendants, the Plaintiffs are threatened with being cut off from booking flights with the Airline Defendants with the consequential damage to or loss of Plaintiffs' travel agency businesses. United currently states in its ticketing guidelines for travel agents:

"Authorization to sell United tickets and services is contingent upon compliance with United's  policies and guidelines for bookings, inventory availability, ticketing, refunds, exchanges, tariffs and commission.  Violations or failure to meet these guidelines may result in loss of an agency's appointment, which will prohibit participation in the sale of United transportation and services, including booking active and passive segments or claiming United segments in any computer reservation system."

(iv)    By booking multi-city flights for their customers by combining lower cost one-way flights, contrary to the Airline Defendants' new rule, the Plaintiffs' customers risk losing baggage or incurring additional baggage charges, or incurring flight cancellation or change fees of up to $200.00 per person if the leg of a flight itinerary is delayed or canceled.

50.     As a result of the foregoing, Plaintiffs' have been damaged in an amount which is not yet ascertained.

51.     In addition, as a result of the above, Plaintiffs' relationships with their customers have been and will continue to be injured and they will suffer injury to their reputations and

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

16

businesses, which will either not be compensable by money damages, or they will be extraordinarily difficult to ascertain.

## IX.   SECOND CAUSE OF ACTION

### (Coordination Facilitating Device)

52.     Plaintiffs reallege each of the foregoing paragraphs as if the same were set forth herein at length.

53.     During the period beginning on or before April 1, 2016, and continuing to the present, each of the Airline Defendants, ATP, and co-conspirators engaged in various combinations and conspiracies with each of the other Airline Defendants and co-conspirators in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 16720 of the Cartwright Act, Cal. Bus. and Prof. Code § 16720. The offenses will continue unless the relief hereinafter prayed for is granted.

54.     The combinations and conspiracies consist of an agreement, understanding, and concert of action among Defendants and co-conspirators to create, maintain, operate, and participate in the ATP fare dissemination system for domestic air passenger transportation services which is a system that has been formulated and operated in a manner that unnecessarily facilitates coordinated interaction among the Airline Defendants and co-conspirators by enabling them to, among other things:

> (a)     engage in a dialogue with one another about planned or contemplated increases to fares, changes in fare restrictions, and the elimination of discounts;

> (b)     monitor each other's intentions concerning increases to fares, changes in fare restrictions, withdrawals of discounted fares; and

> (c)     lessen uncertainty concerning each other's pricing intentions.

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

17

55.     The combination and conspiracy has had and continues to have the following additional effects:

> (a)     coordinated interaction among the Airline Defendants and co-conspirators has been made more frequent, more successful, and more complete;

> (b)     price competition among the Airline Defendants for the provision of air passenger transportation services for domestic multi-city flights has been unreasonably restrained; and

> (c)     Plaintiffs and other consumers of air passenger transportation services have been deprived of the benefits of free and open competition in the sale of such services, including by having to pay supra-competitive prices for multi-city flights.

## X.   PRAYER

WHEREFORE, Plaintiffs pray:

A.     That the Court adjudge and decree that the Defendants and co-conspirators engaged in unlawful combinations and conspiracies in unreasonable restraint of interstate trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and in violation of Section 16720 of the Cartwright Act, Cal. Bus. and Prof. Code § 16720.

B.     That the agreement among the Defendants be declared null and void and unenforceable.

C.     That each Defendant, its officers, directors, agents, employees, and successors and all other persons acting or claiming to act on its behalf be temporarily, preliminarily, and permanently enjoined and restrained from:

> (i)     enforcing any practice or policy that requires Plaintiffs to book flights to multi-city destinations at fares which are greater than the sum of the combined non-refundable one-way fares for each leg of a passenger's flight;

> (ii)     agreeing with any other airline to fix, establish, raise, stabilize, or maintain any fare or fare restriction;

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

(iii)    disseminating to the other Airline Defendants certain information concerning any planned or contemplated fare or fare restriction or any planned or contemplated change to fares or fare restrictions;

and

(iv)    penalizing Plaintiffs for booking multi-city destination flights in the manner proscribed by (i) above, including, without limitation, by issuing debit memos or limiting or terminating Plaintiffs' authorization to book flights on the Airline Defendants.

D.    That Plaintiffs be awarded treble their damages, attorneys' fees, interest and costs of suit.

E.    That Plaintiffs have such other and further relief as the nature of the case may require and the Court may deem just and proper.

## XI.   JURY DEMAND

Plaintiffs hereby demand a trial by jury of all matters properly triable thereto.

Dated: April 17, 2016                    ALIOTO LAW FIRM

By:      s/ Joseph M. Alioto
         Joseph M. Alioto (SBN 42680)
         Theresa D. Moore (SBN 99978)
         Thomas Paul Pier (SBN 235740)
         Jamie L. Miller (SBN 271452)
         ALIOTO LAW FIRM
         One Sansome Street, 35th Floor
         San Francisco, CA  94104
         Telephone:  (415) 434-8900
         Facsimile:  (415) 434-9200
         E-mail:  jmalioto@aliotolaw.com
                  tmoore@aliotolaw.com
                  tpier@aliotolaw.com
                  jmiller@aliotolaw.com

(COUNSEL CONTINUED ON FOLLOWING PAGE)

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

Gil D. Messina (NJ Bar No. 029661978)
*Pro Hac Vice To Be Applied For*
MESSINA LAW FIRM, P.C.
961 Holmdel Road
Holmdel, NJ 07733
Telephone: (732) 332-9300
Facsimile: (732) 332-9301
E-mail: gmessina@messinalawfirm.com

Lawrence G. Papale (SBN 67068)
LAW OFFICES OF LAWRENCE G. PAPALE
The Cornerstone Building
1308 Main Street, Suite 117
St. Helena, CA  94574
Telephone: (707) 963-1704
Facsimile: (707) 963-0706
Email: lgpapale@papalelaw.com

*Attorneys for Plaintiffs*

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act and Section 16720 of the California Cartwright Antitrust Act and for Damages*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Cynthia Prosterman, am a plaintiff in this action.

I have reviewed the Verified Complaint and with regard to the allegations of which I have personal knowledge, I believe them to be true.  With regard to the allegations that are based upon information and belief and of which I do not have personal knowledge, I believe them to be true based upon the information contained in the documents annexed to the Verified Complaint, information obtained from published sources, and the information I have acquired from my years of experience in the travel industry.  I make this verification under the penalty of perjury pursuant to 28 U.S.C. § 1746.

Dated:  April 18, 2016

Cynthia Prosterman

*Complaint to Enjoin Defendants' Violations of Section 1 of the Sherman Antitrust Act
and Section 16720 of the California Cartwright Antitrust Act and for Damages*

# EXHIBIT A

American Airlines

An update to domestic fare combinability rules



## Good Morning,

Recently American Airlines, along with other U.S. carriers, made changes to CAT10 domestic combinability fare rules that impact certain one-way fares. These changes prevent combining nonrefundable local fares to create a connecting itinerary.

### What did we change and why?

We restricted end-on-end combinations of non-refundable fares. These discounted local fares were sometimes pieced together to generate a connecting itinerary priced below the intended fare for that origin and destination. We've always intended to price our fares based on the passenger's origin and the final intended destination. We changed fare and ticketing policies to ensure various fares are used in this way on multiple-segment itineraries.

### Does this affect multi-city trips as well?

Yes, while we planned to limit changes to "sum of locals" pricing, we unintentionally impacted the pricing structure for some multi-city trips, "circle trips" and open jaw itineraries. We've adjusted filings to reduce these unintentional changes and will continue to work on technical enhancements in order to address these complex itineraries.

### What if travelers want to continue booking multiple tickets?

We strongly discourage purchasing separate tickets to make a connection. Traveling on separate tickets increases the likelihood of travel impacts such as missed connections for checked baggage or cancelled tickets if travelers miss a connection.

Please review aa.com/agency for more details about our policies related to these bookings.

For more information, please feel free to reach out to me. And as always, thank you for your business.

Sincerely,

Esther Maldonado

Managing Director, Southwestern Division Sales
American Airlines



View Privacy Policy

This email has been sent on behalf of American Airlines. We are happy to help you with any questions or concerns you may have. For all inquiries about American Airlines or the AAdvantage® program, visit aa.com/contactaa or contact us in writing at American Airlines, 4255 Amon Carter Blvd., MD 2400, Fort Worth, TX 76155-2503.

A portion of all travel booked on American Airlines may be American Eagle® service, operated by Compass Airlines, LLC, Envoy Air Inc., ExpressJet Airlines, Inc., Republic Airline Inc., SkyWest Airlines, Inc., Air Wisconsin Airlines Corporation, Mesa Airlines, Inc., PSA Airlines, Inc., Piedmont Airlines, Inc., or Trans States Airlines, LLC.

American Airlines, American Eagle, AAdvantage, AAdvantage Million Miler, Great for Business and the Flight Symbol logo are marks of American Airlines, Inc.

oneworld is a registered trademark of oneworld Alliance, LLC.

© 2016 American Airlines, Inc. All Rights Reserved.

This email and any information or files transmitted with it are solely for the confidential use of the recipient. This message contains confidential and proprietary information of American Airlines (such as American employee, customer and business data) that may not be read, searched, distributed or otherwise used by anyone other than the intended recipient. If you have received this email in error please notify the sender and promptly delete this message and its attachments.

Please do not respond to this e-mail. This mailbox is for outgoing communications only. If you no longer wish to receive these messages or have additional questions, please contact your sales representative.

# EXHIBIT B



# United Sales

**United News**

March 30, 2016

## Understanding domestic fare combinability rules

Multiple U.S. carriers recently made changes to the CAT10 domestic combinability fare rules impacting some one-way fares.

- **Non-refundable one-way fares** will only allow customers to travel either on a one-way itinerary or a round-trip  (to return back to the origin city e.g., A -> B -> A type combination).

- Combinability restrictions prevent **"sum of sector" pricing** of multi-city itineraries.

- Most legitimate open jaw and circle trips will now auto-price on a single ticket. Certain itineraries that previously priced using a single ticket will now require two or more tickets.
- As this change is in the fare rules, it **applies across all channels**, including united.com and GDS providers. Please note that although the GDS supports pricing of these itinerary types, current online booking tool (OBT) functionality may not support all itinerary type pricing requests.

Note that **refundable fares** may still be booked as end-on-end and are not impacted by these combinability restrictions. Many **international fare** rules already carry combinability

2

restrictions.

**What is sum of sector pricing?**

Sum of sector pricing is when multiple fare types are combined in order to price a fare lower than the available path (O&D) fare. Under the new combinability rules, this ticketing behavior is more restricted. An example of sum of sector pricing is below in black, while the path fares are in blue.



**How do the new combinability rules work?**

- EWR-LAX returning on SFO-EWR would be allowed on a single ticket (returns back to origin city).

- EWR-LAX, LAX-SFO returning SFO-EWR would be allowed on a single ticket (returns back to origin city).

- EWR-ORD returning ORD-LGA would be allowed on a single ticket (returns back to origin city, even though it is a different airport). ORD-LGA returning EWR-ORD would work as a single ticket as well.

- EWR-LAX, LAX-DEN returning DEN-LGA would be allowed on a single ticket (returns back to origin city, even though it is a different airport).

- EWR-LAX then LAX-EWR followed by EWR-IAH would not be allowed (origin and end point are different cities - this is seen as two trips). Another example of this would be flying EWR-LAX, then LAX-SFO, and ending with SFO-IAD.

**Can PNRs be built with multiple tickets?**

Although the United system does support multiple tickets in the same record, please visit united.com/agency for an overview of possible consequences of doing so.

3

# EXHIBIT C



## Update on Fare Combinability Rules

(April 1, 2016) - Delta Air Lines recently made a change to the combinability category in the rules of certain one-way fare products. Based on feedback, we want to provide the following clarification:

**Here's what's the same:**
There are no changes to combinability rules on refundable fares.

**Here's what's changed:**
End-on-end combinability of non-refundable fares has been restricted.

**Can I still construct circle trips using one way fares?**
We did not intend to prevent the booking of legitimate circle trips using any available one way fares. You can book multiple one way tickets for the purpose of constructing legitimate circle trips and put them in one PNR.

**Can I book multiple tickets to construct connecting itineraries other than the ones that Delta publishes for sale?**
You can book any one way ticket we offer for sale, but we do not recommend using multiple one-way tickets to create connecting itineraries.  It increases the likelihood that customers could experience service failures such as lost baggage and missed connections.

# # #

# EXHIBIT D







Three Booking Scenarios:





**FAIR FARES?**

**Family of Four: Pick-Which-Grandparents Scenario**

**Multiple Destinations - Together**
4 people, 3 stops
Newark to Dallas, Dallas to San Francisco,
San Francisco to Newark

**Total Cost:**
**$4,140**

**Multiple Destinations - Individual**
4 people, 3 stops
Newark to Dallas, Dallas to San Francisco,
San Francisco to Newark

**Total Cost:**
**$3,001**

**Visit Dallas or San Francisco?
Or Both?**

**Price Difference:**
**$1,139**



**FAIR FARES?**

**Special Occasions: Which-event-to-attend scenario**

**Multiple Destinations - Together**
1 Adult, 3 stops
Newark to Dallas, Dallas to Tampa, Tampa to Newark

**Total Cost:**
**$567**

**Multiple Destinations - Individual**
1 Adult, 3 stops
Newark to Dallas, Dallas to Tampa, Tampa to Newark

**Total Cost:**
**$268**



**Bachelorette
party and the
wedding? Or
just one?**

**Price Difference:**
**$299**

###