1

2

3

4                    IN THE UNITED STATES DISTRICT COURT

5                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7   CYNTHIA PROSTERMAN, ET AL.,          Case No.  16-cv-02017-MMC

8                    Plaintiffs,

                                          **ORDER GRANTING DEFENDANTS'**
9        v.                               **MOTIONS TO DISMISS**

10  AMERICAN AIRLINES, INC., et al.,      Re: Dkt. Nos. 93, 94

11                   Defendants.

12

13        Before the Court are two motions:  (1) "Motion to Dismiss Amended Complaint,"

14  jointly filed September 2, 2016, by defendants American Airlines, Inc. ("American"),

15  United Airlines, Inc. ("United"), and Delta Air Lines, Inc. ("Delta") (collectively, "Airline

16  Defendants"); and (2) "Motion to Dismiss the First Amended Complaint," filed September

17  2, 2016, by defendant Airline Tariff Publishing Company ("ATPCO").  Plaintiffs have filed

18  a consolidated opposition to the motions, to which the Airline Defendants and ATPCO

19  have separately replied.  Having read and considered the papers filed in support of and in

20  opposition to the motions, the Court rules as follows.[1]

21                              **BACKGROUND**

22        Plaintiffs are forty-one travel agents who assert two antitrust claims against

23  American, United and Delta, three commercial passenger airlines that "together control

24  over 51 percent of the market for domestic passenger air travel in the United States" (see

25  First Amended Complaint ("FAC") ¶ 1), and against ATPCO, a "not-for-profit corporation"

26  owned by a group of airlines that includes the Airline Defendants (see FAC ¶ 14) and

27  _____

28        [1]By order filed October 24, 2016, the Court took the matters under submission.

United States District Court
Northern District of California

United States District Court
Northern District of California

1  "engaged in the collection, processing and dissemination of air passenger transportation

2  fare data" and "publishing of airline rules" (<u>see</u> FAC ¶ 25).

3        In the First Cause of Action, titled "Price Fixing," plaintiffs allege "the Airline

4  Defendants and [ATPCO] conspired" to change the "Category 10 airfare rules" ("CAT

5  10"), specifically, "to change [the] CAT 10 rules on airline combinability in order to

6  prevent air travelers from being able to combine the least expensive, non-refundable,

7  one-way fares for multi-city destination flights" and "to require instead that the

8  passengers pay hundreds and even thousands of dollars more for the same multi-city

9  flights than had been charged before the CAT 10 rule was changed." (<u>See</u> FAC ¶ 62.)

10  For example, prior to the rule changes, although United's fare for a flight from Los

11  Angeles to New Orleans was $363, a passenger could obtain a ticket for a flight between

12  those two cities at the lower cost of $189, by combining on one ticket the price for a one-

13  way ticket from Los Angeles to Houston ($102) and the price for a one-way ticket from

14  Houston to New Orleans ($87). (<u>See</u> FAC ¶ 66; Ex. C at 3.)[2]

15        In the Second Cause of Action, titled "Coordination Facilitating Device," plaintiffs

16  allege ATPCO is "a system that has been formulated and is operated in a manner that

17  unnecessarily facilitates coordinated action against the Airline Defendants" and which

18  system "each of the [d]efendants" agreed to use to set "rules for multi-city domestic air

19  passenger transportation services." (<u>See</u> FAC ¶¶ 93-94.)

20  **LEGAL STANDARD**

21        Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be

22  based on the lack of a cognizable legal theory or the absence of sufficient facts alleged

23  under a cognizable legal theory." <u>See</u> <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696,

24  _____

25      [2]Although the rule changes restrict combining on a "single" ticket "lower, non-refundable, one-way fares on multi-city itineraries" (<u>see</u> FAC ¶¶ 62, 79(a)) passengers

26  may "continue to purchase fares for each leg of a multi-city itinerary where each leg is booked separately," i.e., by purchasing a separate ticket for each leg (<u>see</u> FAC ¶ 79(d).)

27  "Traveling on separate tickets," however, "increases the likelihood of travel impacts such as missed connections for checked baggage or cancelled tickets if travelers miss a

28  connection." (<u>See</u> FAC Ex. B at 3.)

United States District Court
Northern District of California

699 (9th Cir. 1990).  Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  See id. (internal quotation, citation, and alteration omitted).

     In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

     Plaintiffs' antitrust claims are brought pursuant to § 1 of the Sherman Act, which prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States."  See 15 U.S.C. § 1.  To state a cognizable claim under § 1, a plaintiff must allege the existence of an "agreement, as distinct from identical, independent action" by the defendants.  See Twombly, 550 U.S. at 548-49.  "[M]ere allegations of parallel conduct — even consciously parallel conduct — are insufficient to state a claim under § 1."  In re Musical Instruments & Equip. Antitrust Litig., 798 F.3d 1186, 1193 (9th Cir. 2015).  Rather, "[p]laintiffs must plead 'something more,' 'some further factual enhancement,' a 'further circumstance pointing toward a meeting of the minds' of the alleged conspirators."  Id. (quoting Twombly, 550 U.S. at

557, 560).  In that regard, courts have "distinguished permissible parallel conduct from impermissible conspiracy by looking for certain plus factors," id. at 1194 (internal quotation and citation omitted), namely, "economic actions and outcomes that are largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action," id.

Here, in moving for dismissal of plaintiffs' initial complaint, defendants argued plaintiffs had failed to allege any plus factors, and, consequently, failed to allege the existence of an agreement to change the fare rules in the manner challenged by plaintiffs.  The Court conducted a hearing on defendants' motions to dismiss, and, after considering the parties' arguments, granted the motions.  Plaintiffs, with leave of court, thereafter filed the FAC.  By the instant motions, defendants argue plaintiffs once again have failed to plead sufficient facts to show an agreement existed.  The Court next turns to that issue.

Initially, the Court notes that the FAC includes greater specificity as to the timing of the Airline Defendants' actions.  In the FAC, plaintiffs now allege that each of the Airline Defendants made the subject change in "mid-March 2016" (see FAC ¶ 63), which allegation, assumed true at the pleading stage, suffices to allege parallel conduct.  See In re Medical Instruments, 798 F.3d at 1193 (holding "parallel conduct" includes "competitors adopting similar policies around the same time in response to similar market conditions").  As noted above, however, "parallel conduct," even "consciously parallel conduct," is insufficient to state a § 1 claim in the absence of "plus factors."  See id. at 1193-94.  The issue thus before the Court is whether the FAC contains sufficient facts from which an inference can be drawn that the alleged parallel conduct was the product of an agreement.  See Twombly, 550 U.S. at 557 (holding "allegation of parallel conduct . . . gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief" (internal quotation and citation omitted)).

In an effort to meet that additional requirement, plaintiffs have included in the FAC

4

factual allegations from their initial complaint and factual allegations that provide additional detail regarding ATPCO as well as the airline industry in general.

First, with respect to the manner in which ATPCO operates, plaintiffs again allege that the Airline Defendants "transmit fare information, including fare amounts and restrictions, to [ATPCO]" (see FAC ¶ 25; Compl. ¶ 25), that the Airline Defendants submit to ATPCO changes "at least once each weekday" (see FAC ¶ 36; Compl. ¶ 30) and that ATPCO, upon receipt of such fare information, "processes the changes and disseminates [the] information . . . to the Airline Defendants" and to "computer reservation systems" (see FAC ¶ 36; Compl. ¶ 31), after which the Airline Defendants receive from ATPCO "reports" that "allow the Airline Defendants to monitor and analyze immediately each other's fare rules, restrictions and price changes" (see FAC ¶ 38; Compl. ¶ 33).  In the FAC, plaintiffs have supplemented those facts with allegations that the referenced "computer reservation systems" are "GDSs" (see FAC ¶ 47), i.e., reservation systems used by travel agents such as plaintiffs,[3] and that the reports ATPCO provides to the participating airlines are a "tool" called "Market View" that allows those airlines to view "competitors' public fares and rules data," as well as a "program" called "Fare Manager" that allows those airlines to "create, modify, match, or cancel airfares" in "seconds" (see FAC ¶¶ 48-49).

Additionally, plaintiffs now include allegations as to conditions pertaining in the airline industry, specifically, that the "domestic airline passenger industry is a tight oligopoly" in that four carriers "control approximately 80 percent of the market" (see FAC ¶ 30),[4] that the Airline Defendants price "certain legs" at "lower amounts" due to competition from "Ultra Low-Cost Carriers" (see FAC at 3:4-5), that the Airline

---

[3]A GDS is a "computerized system used to distribute airline fare, flight, and availability information to travel agencies . . . , and to enable those agencies to make reservations and issue tickets."  See In re Global Distribution Systems (GDS) Antitrust Litig., 816 F. Supp. 2d 1378, 1378 n.1 (JPML 2011).

[4]According to plaintiffs, three of those four carriers are the Airline Defendants; the fourth is non-party Southwest Airlines, which is a "participant" in ATPCO.  (See id.)

United States District Court
Northern District of California

1  Defendants "watch each other like hawks" using the information available through

2  ATPCO (see FAC ¶ 34), and that, at the time the Airline Defendants imposed the

3  combinability restrictions challenged in the FAC, their "greatest cost component — jet fuel

4  — had steeply fallen in price and was at record low levels" (see FAC ¶ 70).

5  　　　　Although plaintiffs' factual allegations have been expanded, the Court finds the

6  new allegations, considered together with those that have been realleged, are not

7  sufficient to plead "a plausible suggestion of conspiracy."  See Twombly, 550 U.S. at 566.

8  　　　　As plaintiffs acknowledge, the commercial passenger airline industry is an

9  "oligopoly" (see FAC ¶ 30), i.e., "a market in which a few relatively large sellers account

10  for the bulk of the output."  See In re Chocolate Confectionary Antitrust Litig., 801 F.3d

11  383, 397 n.10 (3rd Cir. 2015) (internal quotation and citation omitted).  In such markets,

12  "a single firm's change in output or price will have a noticeable impact on the market and

13  on its rivals," and, consequently, any "rational decision by an oligopolist must take into

14  account the anticipated reaction of the other firms," the "upshot" being that "oligopolists

15  may maintain supracompetitive prices through rational, interdependent decision-making,

16  as opposed to unlawful concerted action, if the oligopolists independently conclude that

17  the industry as a whole would be better off by raising prices."  See id. at 397 (internal

18  quotation, alteration and citation omitted); see also Rebel Oil v. Atlantic Richfield Co., 51

19  F.3d 1421, 1443 (9th Cir. 1995) (holding "[b]y definition, oligopolists are interdependent").

20  Put another way, "one firm can risk being the first to raise prices, confident that if its price

21  is followed, all firms will benefit."  See In re Musical Instruments, 798 F.3d at 1195.  "By

22  that process ('follow the leader'), supracompetitive prices and other anticompetitive

23  practices, once initiated, can spread through a market without any prior agreement."  Id.

24  　　　　Here, plaintiffs' factual allegations do no more than support a finding that the

25  Airline Defendants have engaged in conscious parallelism.  The allegations essentially

26  establish that the Airline Defendants use information obtained through ATPCO to match

27  or otherwise quickly react to a competitor that has made a fare or rule change.  (See,

28  e.g., FAC ¶ 34 (alleging Airline Defendants "watch each other like hawks" and "assess

6

1  changes competitors are making").)  Reacting to a competitor's change by choosing to

2  adopt the same or substantially similar change, however, does not support a § 1 claim.

3  See In re Chocolate Confectionary, 801 F.3d at 397 (holding, although "this practice of

4  parallel pricing, known as 'conscious parallelism,' produces anticompetitive outcomes, it

5  is lawful under the Sherman Act"); see also Rebel Oil, 51 F.3d at 1443 (noting "gap" in

6  Sherman Act).

7       Plaintiffs argue they nonetheless have sufficiently alleged "plus" factors, relying

8  primarily on the Seventh Circuit's decision in In re Text Messaging Antitrust Litig., 630

9  F.3d 622 (7th Cir. 2010) ("Text Messaging I").  Text Messaging I, however, is

10 distinguishable.  The plaintiffs therein had alleged the defendants attended trade

11 association meetings where they informed each other of proposed price changes, see id.

12 at 628; see also In re Text Messaging Antitrust Litig., 2010 WL 1782006, at *3 (N.D. Ill.

13 April 30, 2010), and agreed "to raise prices by a certain amount within a certain time

14 frame," see id.  Further, the plaintiffs in Text Messaging I alleged the defendants

15 "changed their pricing structures, which were heterogeneous and complex, to a uniform

16 pricing structure," see Text Messaging I, 630 F.3d at 628, specifically, that "all four

17 defendant companies, in a series of steps (10 steps in all for the four companies), raised

18 each of their [prices] to 20 cents [per text message]," see In re Text Messaging Antitrust

19 Litig., 782 F.3d 867, 875 (7th Cir. 2015) ("Text Messaging II").

20      Here, by contrast, plaintiffs fail to allege facts to support a finding that defendants

21 were aware of each other's rule changes prior to those changes having been published,[5]

22 _____

23  [5]Although plaintiffs allege the Airline Defendants "know about changes being
    proposed" (see FAC ¶ 34), i.e., before such changes are adopted, such assertion lacks
24  factual support.  In particular, plaintiffs' reliance on a declaration by an American
    manager, initially offered by American in response to plaintiffs' motion for a preliminary
25  injunction, is unavailing.  The statement, that "American knew about similar changes
    made by rival airlines because it monitors the [ATPCO] 'rules queue' to assess any
26  changes that competitors are making in the marketplace" (see FAC ¶ 43), does no more
    that confirm plaintiffs' own factual allegations, namely, that the Airline Defendants have
27  "access" to competitors' changes that have been made and "published" by APTCO (see
    FAC ¶ 45; see also FAC ¶¶ 25, 46, 48-49), i.e., at the same time as travel agents like
28  plaintiffs (see FAC ¶¶ 36, 47).

1  nor do plaintiffs allege the Airline Defendants set identical or even substantially similar

2  fares for any given route.  Although plaintiffs place particular emphasis on their allegation

3  that changes to the combinability rules have resulted in higher prices at a time when the

4  Airline Defendants' fuel costs have decreased (see, e.g., FAC ¶ 70), such "apparent

5  anomaly . . . may be not because [competitors have] agreed not to compete but because

6  all of them have determined independently that they may be better off with a higher

7  price," see Text Messaging II, 782 F.3d at 871, i.e., a decision that in no way can be

8  characterized as "extreme action against self-interest" that "may suggest prior

9  agreement," see In re Musical Instruments, 798 F.3d at 1195.

10  In sum, plaintiffs have failed to "plead[ ] sufficient facts to provide a plausible basis

11  from which [a court] can infer the alleged agreements' existence."  See id. at 1193.

12  Plaintiffs at best have pleaded factual allegations that, assumed true, establish "conduct

13  as consistent with permissible competition as with illegal conspiracy."  See Matsushita

14  Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).  Establishing

15  conduct "merely consistent with" a conspiracy, however, is, as a matter of law, insufficient

16  to state a claim under § 1.  See id.; see also In re Musical Instruments, 798 F.3d at 1189

17  (affirming dismissal of § 1 claim based on theory manufacturers entered into agreement

18  to raise prices, where plaintiffs' allegations were "no more consistent with an illegal

19  agreement than with rational and competitive business strategies, independently adopted

20  by firms acting within an interdependent market").[6]

21  //

22  //

23  //

24  //

25  //

26

27  _____

28  [6]In light of the above ruling, the Court has not addressed herein defendants' additional arguments offered in support of dismissal.

8

*United States District Court*
*Northern District of California*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONCLUSION**

For the reasons stated above, the motions to dismiss are hereby GRANTED, and the First Amended Complaint is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated:  December 8, 2016

MAXINE M. CHESNEY
United States District Judge

United States District Court
Northern District of California