IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA PROSTERMAN, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> AMERICAN AIRLINES, INC., et al., <br><br> Defendants. | Case No. 16-cv-02017-MMC <br><br> **ORDER DENYING PLAINTIFFS' MOTION FOR ORDER INDICATING COURT WILL ENTERTAIN PLAINTIFFS' RULE 60(B) MOTION** |

Before the Court is plaintiffs' motion, filed August 11, 2017, for an "Order Indicating That the Court Will Entertain Plaintiffs' Rule 60(b) Motion." Defendants have filed opposition, to which plaintiffs have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

In the above-titled case, plaintiffs alleged that defendants American Airlines, Inc., United Airlines, Inc., and Delta Air Lines, Inc. conspired with defendant Airline Tariff Publishing Company ("ATPCO") to violate § 1 of the Sherman Act. Specifically, in the First Amended Complaint ("FAC"), plaintiffs alleged that said defendants "conspired to change [the] CAT 10 rules on airfare combinability in order to prevent air travelers from being able to combine the least expensive, non-refundable, one-way fares for multi-city destination flights." (See FAC ¶ 62.)[2]

---

[1] By order filed September 11, 2017, the Court took the matter under submission.

[2] According to plaintiffs, ATPCO "maintains" a "data base consisting of 32 categories of airfare rules" of each of its 400 airline members. (See FAC ¶ 28; Miller Decl. Ex. C.) The tenth such category, "CAT 10," consists of the rules each airline has set "for the combinability of airfares for multi-city flight itineraries." (See FAC ¶ 25.) Each airline "transmit[s] fare information, including fare rules and restrictions, to [ATPCO] which, in turn, disseminates the information to the airline industry" (see id.), including, for example, "airlines," as well as "computer reservations systems that use [ATPCO] data to issue tickets" and "travel agencies" (see Miller Decl. Ex. C).

By order filed December 8, 2016, the Court granted defendants' motions to dismiss the FAC, finding the factual allegations in the FAC insufficient to state a cognizable antitrust claim and concluding as follows:

> In sum, plaintiffs have failed to "plead[ ] sufficient facts to provide a plausible basis from which [a court] can infer the alleged agreements' existence." See [In re Musical Instruments & Equip. Antitrust Litig., 798 F.3d 1186, 1193 (9th Cir. 2015)]. Plaintiffs at best have pleaded factual allegations that, assumed true, establish "conduct as consistent with permissible competition as with illegal conspiracy." See Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986). Establishing conduct "merely consistent with" a conspiracy, however, is, as a matter of law, insufficient to state a claim under § 1. See id.; see also In re Musical Instruments, 798 F.3d at 1189 (affirming dismissal of § 1 claim based on theory manufacturers entered into agreement to raise prices, where plaintiffs' allegations were "no more consistent with an illegal agreement than with rational and competitive business strategies, independently adopted by firms acting within an interdependent market").

(See Order, filed December 8, 2016, at 8:10-20.) The Clerk of Court entered judgment, and plaintiffs, after unsuccessfully moving for relief therefrom, filed a notice of appeal.

By the instant motion, plaintiffs again argue they are entitled to relief from the judgment. In particular, plaintiffs argue that, pursuant to Rule 60(b)(2) of the Federal Rules of Civil Procedure, they are entitled to relief in light of newly discovered evidence.[3] As "[t]he filing of a notice of appeal divests the district court of jurisdiction," see Gould v. Mutual Life Ins. Co., 790 F.2d 769, 772 (9th Cir. 1986), plaintiffs, pursuant to Rule 62.1, request the Court indicate "either that it would grant the [Rule 60(b)] motion if the court of appeals remands for that purpose or that the motion raises a substantial issue," see Fed. R. Civ. P. 62.1(a)(3) (setting forth procedure where "timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed").

A party seeking relief from a judgment on the basis of newly discovered evidence must establish that it "exercised due diligence" to obtain the evidence and that such

---

[3] In the alternative, plaintiffs argue, they are entitled to relief pursuant to Rule 60(b)(3) based on defendants' having "made misrepresentations on the record as to the airlines' relationship with ATPCO." (See Pls.' Mot. at 7-8.) As the Court's order makes clear, however, the FAC was dismissed based on plaintiffs' failure to allege sufficient facts to state a claim, not because of any representation made by defendants. (See Order, filed December 8, 2016, at 3:9-11; see also, e.g., id. at 7:7 - 8:9.)

evidence is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." See Feature Realty, Inc. v. City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003) (internal quotation and citation omitted). Here, as the FAC was dismissed for failure to state a claim, the Court understands plaintiffs to be seeking relief under Rule 60(b) in order to file a Second Amended Complaint ("SAC") and include therein additional factual allegations consistent with the evidence submitted in support of the instant motion. See Lindauer v. Rogers, 91 F.3d 1355, 1357 (9th Cir. 1996) (holding "once judgment has been entered in a case, a motion to amend the complaint can be entertained only if the judgment is first reopened under a motion brought under Rule 59 or 60"). Consequently, plaintiffs must demonstrate they exercised due diligence in obtaining the evidence on which the motion is based and that they could include in their complaint factual allegations, consistent therewith, that would suffice to cure the deficiencies identified in the Court's order of dismissal. The Court next turns to the question of diligence.

Plaintiffs' motion is based on evidence their counsel discovered on July 28, 2017 (see Miller Decl. ¶ 3), which evidence consists of agendas for ATPCO conferences held in, respectively, September 2015 and September 2016 (see id. ¶ 6 & Ex. E, F), and a document identifying topics for an ATPCO meeting held on March 30, 2016 (see id. ¶ 8 & Ex. D). Each document on which plaintiffs rely is located, and was found by plaintiffs' counsel, on a public website maintained by ATPCO. (See id. ¶¶ 12, 14-16 & Exs. D, E, F.) Although defendants argue plaintiffs, given the availability of the documents to the public, fail to demonstrate due diligence, the Court finds persuasive plaintiffs' explanation that the documents, albeit available, were not readily accessible, given the absence of any link thereto on the ATPCO website. (See Messina Decl. ¶¶ 4-7; Miller Reply Decl. Exs. G-J; Miller Decl. ¶¶ 3, 5-8 (describing serendipitous discovery of documents).)

The Court next turns to the question of whether an SAC that includes allegations based on the content of the newly discovered evidence would suffice to cure the deficiencies identified by the Court in its order dismissing the FAC. As discussed below,

3

and for the reasons stated by defendants in their opposition (see Defs.' Opp. at 9:6 - 14:3), the Court finds it would not.

The written documents submitted by plaintiffs include: (1) a request made on April 30, 2015, by Aegean Airlines, a non-party, that ATPCO "check the possibility of hardcoding" in the ATPCO system an Aegean Airlines rule under which Aegean Airlines does not allow "end-on-end combinations" for "travel within 24 hours" (see Miller Decl. Ex. E at 21);[4] (2) ATPCO's response that "the current system may not provide a way to qualify end-on-end combinations based on elapsed time over the combination" and proposal that the matter be included as "an agenda topic for the next Combinations (Category 10) Data Application Working Group" (see Miller Decl. Ex. E at 21); (3) ATPCO's statement, in the agenda for a conference held in September 2015, that carriers "prefer an automated solution to specify when and under what restrictions their fares can or cannot combine" and that ATPCO's goal is for carriers to "have full control of their combination requirements" (see id. Ex. E at 69); (4) ATPCO's proposal, in the above-referenced agenda, to "[a]dd functionality" to the ATPCO system for purposes of allowing an airline to specify that, if a "journey meets the definition of an Open Jaw" or a "Circle Trip,"[5] the journey "cannot be priced as an End-on-End solution" (see Miller Decl. Ex. E at 70); (5) a recommendation by ATPCO to convene "a 2016 Combinations Working Group" to "propose a solution" that would "include revised record layouts, field descriptions, and data application" (see id.); and (6) an ATPCO calendar showing the "2016 Working Group Meeting" was held online on March 30, 2016 (see id. Ex. A at 2,

---

[4] The parties agree that the term "end-on-end" refers to a trip where two or more fares are combined on one ticket. (See Pls.' Mot. at 4:27-28; Defs.' Opp. at 11:24-25.) The FAC provides as an example a trip from "New York to Ft. Lauderdale to Chicago and back to New York" in which the ticket is priced by "combining the fare for each leg of the trip." (See FAC ¶ 84(c).)

[5] According to plaintiffs, an "Open Jaw" trip is one in which "the destination and/or point of departure are not the same in both directions," e.g., "SFO to JFK (New York), plus DCA (Washington, D.C.) to SFO," and a "Circle Trip" is one that "involves more than a single destination, but which returns to the initial origin," e.g., "SFO to JFK, JFK to DCA, DCA to ORD [and] ORD to SFO." (See Pls.' Mot. at 4:25-27.)

Exs. B, D).

Assuming, arguendo, the three airline defendants attended the online meeting organized by ATPCO, any such attendance is not, by itself, sufficient to support a finding that defendants entered into an unlawful agreement. See In re Musical Instruments, 798 F.3d at 1196 (affirming dismissal of Sherman Act claim; holding "mere participation in trade-organization meetings where information is exchanged and strategies are advocated does not suggest an illegal agreement"). Although plaintiffs contend the above-described documents show "ATPCO arranged — and its airline customers participated in — an online meeting . . . to agree on CAT-10 Fare Rule changes" or, "at the very least," that defendants "met online and agreed to institute these structural changes to the CAT-10 Fare Rules on a common date" (see Pls.' Mot. at 14:8-9, 12-15), nothing in the documents states or even suggests that the entities attending the online meeting had an agreement to change fares or fare rules. Rather, the documents show the meeting was held for the purpose of addressing the best way for ATPCO to make changes to its technology to reflect each airline's combination requirements. (See Miller Decl. Ex D, Ex. E at 21, 70.) Indeed, after the meeting, ATPCO, in an agenda for a conference it held in September 2016, informed its members of a working group's proposal that "all combination restrictions be specified via automated data in Category 10 rather than hard coded," which change would "allow carriers to control fare combinations based on their individual business needs." (See id. Ex. F at 68.)

In sum, plaintiffs have failed to show the newly discovered evidence, if alleged in a Second Amended Complaint, would be sufficient to defeat a motion to dismiss. Under such circumstances, leave to file an amended pleading would serve no purpose as such amendment would be futile. See Carrico v. City and County of San Francisco, 656 F.3d 1002, 1008 (9th Cir. 2011) (holding leave to amend "properly denied" where "amendment would be futile").

//
//

**CONCLUSION**

For the reasons stated above, plaintiffs' motion for an order indicating the Court will entertain plaintiffs' Rule 60(b) motion is hereby DENIED.

**IT IS SO ORDERED.**

Dated: October 5, 2017

MAXINE M. CHESNEY
United States District Judge