**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 23 2018

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| CYNTHIA PROSTERMAN; et al., | No. 17-15468 |
| Plaintiffs-Appellants, | D.C. No. 3:16-cv-02017-MMC |
| v. | |
| AMERICAN AIRLINES, INC.; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, District Judge, Presiding

Argued and Submitted June 13, 2018
San Francisco, California

Before: SCHROEDER, EBEL,** and OWENS, Circuit Judges.

Every commuter knows the gas station effect. The prices on two gas stations on opposing corners of a busy intersection often move in near unison.

This phenomenon also occurs in the airline industry. With a market comprised of a few dominant players and publicly available pricing information, it

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\** The Honorable David M. Ebel, United States Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

is no surprise that consumer fares remain relatively uniform across the industry. That is not to say that unlawful agreements among air carriers never occur, nor that all claims based on Section 1 of the Sherman Act must fail. But in an interdependent oligopoly such as the U.S. airline industry, a plaintiff whose claim lies under Section 1 of the Sherman Act must plead more than conscious parallelism to survive a motion to dismiss. Because Plaintiffs here failed to offer sufficient "plus factors" suggesting more than conscious parallelism, see In re Musical Instruments, 798 F.3d 1186, 1194 (9th Cir. 2015), we AFFIRM.

## I. BACKGROUND

Plaintiffs, who are "air travel passengers and travel agents," "First Amended Complaint" or "FAC" ¶ 5[1], brought this suit under Section 1 of the Sherman Act, alleging that United Airlines, Inc., American Airlines, Inc. and Delta Air Lines, Inc. (collectively, the "Airline Defendants") conspired amongst themselves and with the Airline Tariff Publishing Company ("ATPCO") to institute a "drastic change in the structure of pricing multi-city travel." FAC at 2–3. Prior to the events that precipitated this lawsuit, travel agents and consumers could sometimes combine multiple shorter nonstop flights to reduce the price of longer trips. This act of combining multiple one-way tickets to reduce the overall cost is known as

---

[1] At the motion-to-dismiss stage we accept the FAC's well-pleaded factual allegations as true and construe all inferences in favor of Plaintiffs. Mashiri v. Epsten Grinnel & Howell, 845 F.3d 984, 988 (9th Cir. 2017).

"sum of sector" pricing.

On March 30, 2016, United announced that "multiple U.S. carriers recently made changes to the CAT 10[2] domestic combinability fare rules impacting some one-way fares." Id. On April 1, 2016, American Airlines announced that it "along with other U.S. carriers, made changes to the CAT 10 domestic combinability fare rules that impact certain one-way fares." FAC ¶ 64. That same day Delta Air Lines announced that it, too, had "recently made changes to the combinability of one-way fare products." Id. ¶ 67. The effect of the announced changes was to curtail the availability of sum-of-sector pricing at each of these airlines.

Plaintiffs allege that "sometime prior to mid-March 2016," Id. ¶ 3, the Airline Defendants colluded through ATPCO to make this change, which increased the cost of domestic multi-city trips. Defendants moved to dismiss for failure to state a claim, and the district court granted that motion, and later denied a Rule 62.1 Motion for an Indicative Ruling that the court would entertain Plaintiffs' Rule 60(b) motion for relief from the judgment on the basis of new evidence. Both rulings are before us on appeal, and we AFFIRM.

## II. DISCUSSION

### A. The Motion to Dismiss

---

[2] CAT 10 stands for Category 10, which is the category of pricing information distributed by ATPCO to airlines and travel agents concerning the combinability of multi-city airfares.

We review dismissal of the complaint de novo, Kendall v. Visa U.S.A., Inc., 518 F.3d 1042, 1046 (9th Cir. 2008), using the now-familiar plausibility rubric established by Twombly[3] and its progeny. Under this framework, "when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action." Twombly, 550 U.S. at 557. "Even 'conscious parallelism,' a common reaction of 'firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions' is 'not in itself unlawful.'" Id. at 553–54 (quoting Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp., 509 U.S. 209, 227 (1993)) (alterations in original). If a plaintiff fails to provide something more—to "nudge[] [his or her] claim[] across the line from conceivable to plausible"—a complaint which alleges conscious parallelism "must be dismissed." Id. at 570.

In the Ninth Circuit we have described the allegations required for this "nudge" as "plus factors," or "'some further factual enhancement,' a 'further circumstance pointing toward a meeting of the minds' of the alleged conspirators." In re Musical Instruments, 798 F.3d at 1193 (quoting Twombly, 550 U.S. at 557, 560, 570). These "plus factors" are often "economic actions and outcomes that are

---

[3] Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007).

largely inconsistent with unilateral conduct but largely consistent with explicitly coordinated action," id. at 1194.

In re Musical Instruments is instructive. There, we rejected the proposed "plus factors" as insufficient to survive a motion to dismiss because the stated factors were simply activities one would expect in an interdependent market, where "firms may engage in consciously parallel conduct through observation of their competitors' decisions even absent an agreement." Id. at 1194-97.

So too here. Each of Plaintiffs' proposed plus factors is a restatement of the conscious parallelism endemic to an oligopoly. Under In re Musical Instruments, allegations of a "common motive" are insufficient to state a claim because "alleging 'common motive to conspire' simply restates that a market is interdependent." 798 F.3d at 1195. The same analysis applies to allegations the airlines acted against self-interest. While a company acting against self-interest can sometimes be a plus-factor, in an interdependent oligopoly it may be in a company's interest to raise prices in the hope that its competitors play "follow the leader." In re Musical Instruments, 798 F.3d at 1195. In this way, conscious parallelism also explains the Airline Defendants' decision to change their rules in such a way as to increase prices notwithstanding "steeply falling costs." FAC ¶¶ 45–48; In re Musical Instruments, 798 F.3d at 1197.

As for the mechanics of the change itself, Plaintiffs argue the simultaneity of

the decisions is evidence of an agreement. But again, In re Musical Instruments holds that simultaneity "does not reveal anything more than similar reaction to similar pressures within an interdependent market, or conscious parallelism." 798 F.3d at 1196. Similarly, while "complex and historically unprecedented changes in pricing structure made at the very same time by multiple competitors" might suggest collusion, Twombly, 550 U.S. at 556 n.4, such complexity is absent here. Perhaps hardcoding the airlines' new rule changes into ATPCO's reservation and information systems may have been complex, but that is a question of implementation not determination. The airlines' decisions to eliminate sum-of-sector pricing are not so complex as to suggest an agreement.

Finally, Plaintiffs allege that the Airline Defendants used ATPCO as a "coordination facilitating device." FAC at 26. ATPCO—while not technically a trade association—plays a similar role in the marketplace. As the FAC describes, ATPCO provides a "clearinghouse" for pricing information, much like a trade organization. See In re Musical Instruments, 798 F.3d at 1196; FAC at 2; see also FAC ¶¶ 34-36. After that information has been made available to the public, ATPCO then publishes each airline's fares and rules to the other airline members of ATPCO, and those airlines use this information "for internal management purposes, including [deciding] whether or not to respond to the competitive actions of other airlines."

We have long been skeptical that participation in a trade organization is suggestive of collusion, see, e.g., In re Citric Acid Litig., 191 F.3d 1090, 1098 (9th Cir. 1999), and that skepticism has only hardened since Twombly and its progeny. In re Musical Instruments, 798 F.3d at 1196. And while it may be possible for participation in an ATPCO-like organization to suggest collusion, see, e.g., B&R Supermarket, Inc. v. Visa, Inc., No. C 16-01150, 2016 WL 5725010, at *8 (N.D. Cal. Sept. 30, 2016) (unreported)[4], the FAC here contains no factual allegations sufficient under Twombly to suggest that ATPCO coordinated collusive behavior.

Plaintiffs' final volley is that all of these potential plus factors, viewed under a totality-of-the-circumstances test, In re Musical Instruments, 798 F.3d at 1198, are sufficient to survive a motion to dismiss. But even viewed collectively, Plaintiffs' plus factors suggest only conscious parallelism in an interdependent oligopoly. Accordingly, we AFFIRM the district court's decision to grant the motion to dismiss.

### B. The Motion under Rule 62.1

After filing a notice of appeal, Plaintiffs discovered "new" evidence that ATPCO hosted an online meeting on March 30, 2016 that Plaintiffs claim addressed the issues raised in this lawsuit. Following this discovery, Plaintiffs

---

[4] While we are generally hesitant to cite unreported district court orders, we note B&R Supermarkets because of the extent to which Plaintiffs relied on that case on appeal.

filed a motion in district court pursuant to Fed. R. Civ. P. 62.1 asking that court to issue an indicative ruling under Rule 62.1(a)(3) that it would entertain Plaintiffs' motion for relief from judgment on the basis of newly discovered evidence. The district court denied that motion, see Fed. R. Civ. P. 62.1(a)(2), holding that relief would be futile because this evidence, "if alleged in a Second Amended Complaint, would [not] be sufficient to defeat a motion to dismiss." Reviewing this denial for an abuse of discretion, we AFFIRM.

First, in order to be relieved from the district court's judgment, Plaintiffs would have to establish that evidence of this online meeting could not have been discovered earlier with "reasonable diligence." Fed. R. Civ. P. 60(b)(2). This is doubtful given that Plaintiffs admit they found this evidence by "typ[ing] in a phrase from an attachment to Plaintiffs' FAC in an internet search[,]" and that "the document can be found by internet search engine[.]"

In any event, the online meeting, described in the agenda submitted by Plaintiffs as the "Second Quarter 2016 [Data Application] Working Group Meeting," occurred in response to a business request submitted in 2015 by non-Defendant ATPCO member Aegean Airlines. That agenda further outlines that the online meeting's goal was in part to "[r]evise ATPCO's User Interface . . . to make it easier for airlines to quickly and accurately specify and maintain Combination restrictions for their carrier fares." Id.

In this light the online meeting does nothing to make a conspiracy more plausible. Instead, it suggests that the airlines independently decided to disallow sum-of-sector pricing—which was clearly an issue in the industry as early as 2015—and thereafter worked with ATPCO to apply and implement the airlines' decisions while still leaving discretion to the individual airlines to develop or revise their rules for sum-of-sector pricing.

Accordingly, we AFFIRM the district court's decision to deny the Rule 62.1 motion for an indicative ruling.

### III.  CONCLUSION

The district court's rulings are AFFIRMED in full.